Argued and submitted January 6, peremptory writ to issue as decided
February 19, 1993

# STATE ex rel Jose Hernandez TORRES,
*Plaintiff-Relator,*

*v.*

# The Honorable James A. MASON,
Circuit Court Judge of the
Nineteenth Judicial District
for the State of Oregon,
*Defendant.*

(SC S39372)

848 P2d 592

John P. Salisbury, of Grove & Salisbury, Clatskanie, argued the cause and filed the briefs for plaintiff-relator.

Wesley S. Johnson, Longview, Washington, argued the cause and filed the brief for defendant.

PETERSON, J.

## PETERSON, J.

The questions presented in this mandamus proceeding are whether Oregon's Uniform Child Custody Jurisdiction Act (UCCJA), ORS 109.700 to 109.930,[1] applies to adoption proceedings and, if so, whether that Act confers jurisdiction on an Oregon court under the facts of this case. We conclude that the UCCJA applies to adoption proceedings but that, in this instance, it does not confer jurisdiction on an Oregon court. Accordingly, we order that a peremptory writ of mandamus shall issue, directing the trial court judge to dismiss this adoption proceeding.

Jose Hernandez Torres (father) married Donna Lee Wing (mother) in the state of Washington in 1983. In 1986, a child was born to the couple. In May 1990, father and mother were divorced in Washington. The Superior Court for Cowlitz County entered a Decree of Dissolution of Marriage that awarded custody of child to mother, with reasonable visitation rights to father. Following the divorce, father, mother, and child continued to reside in Washington state.

In July 1991, in Washington state, mother consented to the adoption of child by Douglas and Kathleen Ray, residents of Oregon. In August 1991, the Rays took child to Columbia County, Oregon, to live with them. One month later, in the Columbia County Circuit Court of Oregon, the Rays filed a petition to adopt child. On September 24, 1991, the Columbia County Circuit Court Judge (defendant) appointed the Rays as temporary guardians of child. On February 7, 1992, father moved to dismiss the adoption proceeding, arguing that the Oregon court lacked subject-matter jurisdiction. After a hearing, defendant judge denied father's motion to dismiss. Father then filed a petition for an alternative writ of mandamus, which this court granted.

Father contends that whether an Oregon court has jurisdiction over an adoption proceeding is determined by the UCCJA, ORS 109.700 *et seq.* The UCCJA applies to "a child *custody determination* by initial or modification decree." ORS 109.730(1) [§ 3(a)] (emphasis added). If an adoption

---

[1] Oregon's UCCJA is taken from the Uniform Child Custody Jurisdiction Act, 9 ULA 115 *et seq* (1992). Bracketed references in this opinion are to the parallel sections of the uniform act, *e.g.*, ORS 109.710 [§ 2].

proceeding is a "child custody determination," then the UCCJA applies to adoption proceedings.

■■    ORS 109.710 [§ 2] defines "custody determination" and "custody proceeding" as follows:

"(2) 'Custody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights. 'Custody determination' does not include a decision relating to child support or any other monetary obligation of any person.

"(3) 'Custody proceeding' includes proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings."

The UCCJA does not expressly state whether an adoption proceeding is a "custody determination." However, adoption proceedings invariably result in "court orders and instructions providing for the custody of a child." The purpose of an adoption proceeding is to divest a natural parent of all parental rights, including the right of custody, and to bestow those parental rights, including the right of custody, on the adoptive parent or parents. ORS 109.350 states that, "from the date of the decree the child, to all legal intents and purposes, is the child of the petitioner." In a real sense, an adoption decree is the ultimate "custody determination." Unless adoptions are covered, the stated purposes of the UCCJA, *see* note 4, *post*, are only partially achieved.

The commentary to the uniform act states that the phrase " 'custody proceeding' is to be understood in a broad sense. The term covers habeas corpus actions, guardianship petitions, and *other proceedings* available under general state laws to determine custody." Uniform Child Custody Jurisdiction Act § 2 Comment, 9 ULA 115, 134 (1988) (emphasis added). According to Bodenheimer and Neeley-Kvarme (Professor Bodenheimer was the drafter and reporter for the uniform act), in all cases involving "divorce custody disputes, guardianship, neglect and abuse cases, adoptions, and actions to terminate parental rights, * * * the core question is where and with whom a child should live when something has occurred to disrupt the family." Bodenheimer & Neeley-Kvarme, *Jurisdiction Over Child Custody and Adoption After Shaffer and Kulko*, 12 UC Davis L Rev 229, 232 (1979).

They conclude that the uniform act should be applied to adoption proceedings. *Id.* at 252-53.[2] A majority of states that have considered the issue, under statutes virtually identical to ours, agree. *Souza v. Superior Court,* 193 Cal App 3d 1304, 238 Cal Rptr 892 (1987); *Gainey v. Olivo,* 258 Ga 640, 373 SE2d 4 (1988); *Noga v. Noga,* 111 Ill App 3d 328, 443 NE2d 1142 (1982); *Foster v. Stein,* 183 Mich App 424, 454 NW2d 244 (1990); *In re Adoption of B.E.W.G.,* 379 Pa Super 264, 549 A2d 1286 (1988); *In re Steven C.,* 169 Wis 2d 727, 486 NW2d 572 (1992). *Contra Williams v. Knott,* 690 SW2d 605 (Texas App 1985); *In re Johnson,* 415 NE2d 108 (Ind App 1981).[3]

In addition, ORS 109.720(2) [§ 1(b)] mandates that the UCCJA "shall be construed to promote the general purposes stated in this section."[4] Many of those general purposes

---

[2] In *Stubbs v. Weathersby,* 113 Or App 501, 833 P2d 1297 (1992), the Court of Appeals held that the UCCJA applies to adoption proceedings.

[3] *See* Hartfield, *The Uniform Child Custody Jurisdiction Act and the Problem of Jurisdiction in Interstate Adoption: An Easy Fix,* 43 Okla L Rev 621 (1990), for a discussion of how various state courts have decided this issue.

[4] ORS 109.720(1) [§ 1(a)] provides:

"(1)  The general purposes of ORS 109.700 to 109.930 are to:

"(a)  Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

"(b)  Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

"(c)  Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and the family of the child have the closest connection and where significant evidence concerning care, protection, training, and personal relationships of the child is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and the family of the child have a closer connection with another state;

"(d)  Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

"(e)  Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

"(f)  Avoid relitigation of custody decisions of other states in this state in so far as feasible;

"(g)  Facilitate the enforcement of custody decrees of other states;

"(h)  Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

"(i)  Make uniform the law of those states which enact it."

would be promoted by applying the UCCJA to adoption proceedings.

First, "jurisdictional competition and conflict with courts" would be minimized. ORS 109.720(1)(a) [§ 1(a)(1)]. For example, an adopting parent may initiate adoption proceedings in one state while, simultaneously, the natural parent seeks modification of a prior custody determination in another state. The question becomes, which state should exercise jurisdiction? This exact scenario arose in *Souza v. Superior Court, supra,* 238 Cal Rptr at 896, where the California court, after applying uniform act principles, declined to exercise jurisdiction over the adoption proceeding, because a Hawaiian court had already exercised jurisdiction over a custody modification proceeding.

This court has recognized the importance of avoiding jurisdictional conflict. *Grubs v. Ross,* 291 Or 263, 268-69, 630 P2d 353 (1981), states:

"The Act aims to avoid the jurisdictional conflicts and confusions which have resulted in the past by providing, as clearly as possible, for *one* court in *one* state to have major responsibility to determine who is to have custody of a particular child."

Adoption proceedings, like post-divorce custody proceedings, may result in knotty jurisdictional conflicts unless the UCCJA is applied.

Second, applying the UCCJA to adoption proceedings would encourage cooperation with the courts of other states, in order to further the best interests of children. ORS 109.720(1)(b) [§ 1(a)(2)]. The UCCJA provides that, if an Oregon court "has reason to believe that [custody] proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state." ORS 109.760(2) [§ 6(b)].

Third, applying the UCCJA to adoption proceedings would help ensure that the proceedings take place in the state with the closest connection to the family and in which significant evidence is available. ORS 109.720(1)(c) [§ 1(a)(3)].

■ The UCCJA is a uniform act, adopted as part of a uniform scheme. Its goals include the avoidance of relitigation and multiple litigation of custody decisions and uniform application of the law from one state to the next. In the light of those goals, the language of ORS 109.710(2) and (3) [§ 2], the commentary to the uniform act, and considering the purposes for which the UCCJA was enacted, we conclude that the UCCJA applies to adoption proceedings.

We next turn to the question whether, in this adoption proceeding, the UCCJA confers jurisdiction on the Oregon court. ORS 109.730(1) [§ 3(a)] lists four bases for "jurisdiction to make a child custody determination by initial or modification decree." Under ORS 109.730(1) [§ 3(a)], an Oregon court has jurisdiction if:

"(a)  This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state;

"(b)  It is in the best interest of the child that a court of this state assume jurisdiction because the child and the parents of the child, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(c)  The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

"(d)  It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b) or (c) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction."

Defendant judge argues that paragraphs (1)(b) and (1)(d) apply in the present case to grant jurisdiction to an Oregon court.

■    Defendant judge first relies on ORS 109.730(1)(b) [§ 3(a)(2)], which vests Oregon courts with jurisdiction if the child and at least one contestant have a "significant connection" with Oregon *and* substantial evidence exists in Oregon. Whether substantial evidence exists in Oregon is irrelevant, however, if the child does not have a significant connection to this state. The UCCJA does not say when a child's connection to a state becomes "significant." In *Grubs v. Ross, supra*, this court discussed whether a child had a "significant connection" to Oregon when that child had been abducted in Montana by his natural father and then resided in Oregon for 21 months. Regarding whether "home state" jurisdiction existed under ORS 109.730(1)(a) [§ 3(a)(1)] and "significant connection" jurisdiction existed under ORS 109.730(1)(b) [§ 3(a)(2)], the court stated:

> "Therefore, even in cases involving abduction of over six months in length, where the parent has been in the forum state for six months or longer, jurisdiction would exist under ORS 109.730(1)(a) unless barred by another section of the Act. As a corollary, in such cases jurisdiction would seem to exist, as well, under ORS 109.730(1)(b), for with the passage of time, the abducting parent and the child develop 'a significant connection' with the state * * *." 291 Or at 270-71 (footnote omitted).[5]

■    In this case, child had lived his whole life in Washington, only to move to Oregon one month before the adoption proceeding was commenced.[6] Under the facts of this case, one month is not a sufficient passage of time to develop a significant connection under ORS 109.730(1)(b) [§ 3(a)(2)]. Because

---

[5] Even so, the *Grubs* court held that Oregon courts should not exercise jurisdiction, because the child had been abducted and because the "decree state," Montana, continued to have jurisdiction. 291 Or at 276-77.

[6] We determine whether a significant connection exists as of the date that the adoption proceeding was commenced, not the date that the hearing was held. If a significant connection could be established as of the date of a custody hearing, some litigants would be encouraged to delay proceedings in order to establish a significant connection in another state. *Plas v. Superior Court*, 155 Cal App 3d 1008, 202 Cal Rptr 490 n 5 (Cal App 1984); *In re Danke*, 169 Mich App 453, 426 NW2d 740, 742 (1988); *Curtis v. Curtis*, 574 So 2d 24, 30 (Miss 1990); *Catlin v. Catlin*, 494 NW2d 581 (ND 1992).

child did not have a significant connection to Oregon, we need not inquire whether "substantial evidence concerning the child's present or future care, protection, training, and personal relationships" exists in Oregon. The Oregon circuit court did not have jurisdiction under ORS 109.730(1)(b) [§ 3(a)(2)].

Defendant judge also relies on ORS 109.730(1)(d) [§ 3(a)(4)], which provides for "default jurisdiction" if "[i]t appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b) or (c) of this subsection."[7] In other words, Oregon may exercise jurisdiction if Washington could not. Washington has adopted the uniform act, RCW 26.27 *et seq.* RCW 26.27.030(1)(a) (the counterpart to ORS 109.730(1)(a) [§ 3(a)(1)]), creates Washington jurisdiction if, within six months before the commencement of the proceeding, a child has lived with a parent for six consecutive months in Washington. This is commonly referred to as "home state" jurisdiction. Here, child had lived his whole life in Washington, until one month before the adoption proceeding. Thus it appears that, under the uniform act, a Washington court would have had "home state" jurisdiction at the time that the petition was filed. Although we have found no Washington appellate decision holding that an adoption proceeding is governed by the Washington version of the uniform act, it appears that a Washington court would have jurisdiction of the adoption proceeding under RCW 26.33.030.[8] Because a Washington court would have had jurisdiction over this

---

[7] "Default jurisdiction" may also exist in Oregon if "another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum." ORS 109.730(1)(d) [§ 3(a)(4)]. This alternative basis for jurisdiction is inapplicable to the present case, on this record, because a Washington court has not declined to exercise jurisdiction over this adoption proceeding.

[8] RCW 26.33.030 provides jurisdiction to a Washington court over an adoption proceeding if the child is domiciled in Washington. *See In re Adoption of Baby Boy C.*, 31 Wash App 639, 644 P2d 150, 153 (1982) (construing a prior version of RCW 26.33.030, jurisdiction exists if the child is domiciled in Washington). Here, although child lived in Oregon at the time that the adoption petition was filed, under Washington law, "the domicile of the children follows that of the parent having legal custody." *In re Marriage of Myers*, 92 Wash 2d 113, 594 P2d 902, 903 (1979). Mother had legal custody of child at the time that the adoption proceeding was commenced, and Mother was domiciled in Washington. Therefore, child also was domiciled in Washington when the adoption proceeding was commenced in Oregon, and a Washington court would have had jurisdiction over his adoption under RCW 26.33.030.

adoption proceeding when it was filed, Oregon did not have default jurisdiction under ORS 109.730(1)(d) [§ 3(a)(4)]. We conclude that, under the UCCJA, the Oregon circuit court did not have subject-matter jurisdiction over this adoption proceeding. It follows that the adoption proceeding should be dismissed.

A peremptory writ shall issue, directing defendant judge to dismiss the adoption proceeding.

Peremptory writ to issue.