Argued and submitted August 25, 2009, affirmed March 24, 2010

PRIME PROPERTIES, INC.,
an Oregon corporation,
*Plaintiff-Respondent,*

*v.*

Leonard James LEAHY,
*Defendant-Appellant.*

Multnomah County Circuit Court
071011594; A138138

228 P3d 617

Monica L. Finch argued the cause for appellant. On the opening brief and with her on the reply brief was Eli D. Stutsman.

Joseph A. Yazbeck, Jr., argued the cause for respondent. With him on the brief was Yazbeck, Cloran & Hanson, LLC.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Defendant appeals a judgment based on an arbitrator's award of damages in plaintiff's favor. Defendant assigns error to the trial court's denial of his petition to vacate the arbitration award and the court's entry of the judgment. He argued to the trial court that, because plaintiff's attorney was represented in an unrelated matter by an attorney in the arbitrator's law firm, the court was required to vacate the award under ORS 36.705 based on "evident partiality" by the arbitrator. The court ruled that defendant had not made a timely formal objection to the arbitrator's participation and, moreover, that defendant had failed to establish evident partiality. Defendant appeals. We conclude that defendant sufficiently objected to the arbitrator's participation, but that the record supports the trial court's finding as to evident partiality. Accordingly, we affirm.

We take the following facts from the record. The arbitration at issue arose from a real estate transaction between the parties. The transaction led to a dispute between the parties, the details of which are not material to this case. As a result of the dispute, plaintiff filed a claim for damages with Arbitration Services of Portland (ASP), in accordance with an arbitration provision in the earnest money agreement. The parties selected an arbitrator, Batchelor, from a list provided by ASP, and an arbitration hearing was scheduled for August 1, 2007. About two weeks before the hearing, plaintiff brought in a new attorney, Mutnick, to represent him at the hearing. Around the same time, Mutnick, who was personally involved in an unrelated legal matter, hired another lawyer, Glade, to represent him in that matter. Glade is a partner in Batchelor's law firm.

At the beginning of the hearing on August 1, Batchelor informed the parties that he had become aware of the relationship between Mutnick and Glade. He gave the parties an opportunity to speak privately with their respective attorneys, after which defendant objected to Batchelor's continued service as arbitrator. Batchelor overruled the objection, but, in the presence of the parties' attorneys, he called the ASP administrator, Damis, and explained the situation. Damis agreed that Batchelor could continue as the

arbitrator. The hearing then resumed with no further objection by defendant. Batchelor issued a written decision on August 28, 2007. He ruled in plaintiff's favor and awarded plaintiff approximately $66,000 in damages.

Plaintiff thereafter petitioned the trial court to confirm the arbitration award. Defendant responded with a petition to vacate the award. He argued that the representation of plaintiff's attorney by Batchelor's law firm caused "evident partiality" under ORS 36.705(1)(b)(A), and that that statute required the court to vacate the award.

At the hearing on the parties' respective petitions, the court described the relationship between Batchelor's law firm and Mutnick as an "apparent conflict" and an "actual conflict" and expressed surprise that the arbitration had gone forward. However, the court noted that, aside from defendant's oral objection to Batchelor's continued participation, "nothing formal took place" until after the award was issued. The court opined that defendant's counsel "should have acted sooner to do something instead of waiting for an award and then have it not go his way and then complain." The court then ruled on defendant's petition:

> "[T]he language of the statute is may vacate the award under the circumstance if it's evident partiality.
>
> "I don't find that. I—and it's may, not shall. And given the duration of time that passed between the arbitration happening and any kind of formal objection taking place beyond the oral objection, I don't find—I'll make two findings.
>
> "One, I think that there—there's a time delay that's not reasonable, and so for that reason, I'm denying the motion to vacate.
>
> "And then the second piece is that on the record that's before me, I don't see anything that would lend itself to an objective finding of evident partiality on behalf of Mr. Batchelor. And so * * * for those two reasons, I'm denying the motion."

The court entered an order confirming the arbitration award and, ultimately, a judgment in conformity with the award. This appeal followed.

██ Defendant challenges both bases for the trial court's ruling. Because the court articulated independent bases for denying defendant's petition to vacate the award, to prevail on appeal, defendant must show that both bases were erroneous. We begin with the court's finding that defendant delayed unreasonably in objecting formally to Batchelor's service as arbitrator. Defendant argues that he used the sole mechanism for objecting that was available to him before the award was made, namely, ASP's Arbitration Rule 12, which provides:

> "**Arbitrator Challenge Procedure.** At any time prior to the rendering of the award, but as soon as practicable after acquiring such information, any party may challenge an arbitrator on the basis of partiality, bias, financial or personal interest in the result of the arbitration, or past or current relationship with any party, a party's representatives, a party's attorney, a witness, or another arbitrator (if any). The challenging party shall inform ASP of such information in writing and serve a copy thereof on the other parties. If the arbitrator denies such information or denies that it would affect the arbitration and therefore declines to resign, ASP shall determine whether the arbitrator should be disqualified, and the decision of ASP shall be conclusive on the parties."[1]

(Boldface in original.) Defendant acknowledges that the rule requires that the objection be made in writing, but he asserts that, under ORS 36.650(6), which requires only substantial compliance with the procedural rules of an arbitration organization as a condition precedent to vacatur by a court, his oral objection was sufficient under the circumstances.

We agree. Defendant's oral objection at the arbitration proceeding and the events that followed satisfied the purposes of Rule 12. Defendant informed Batchelor and plaintiff of his objection to Batchelor's service and gave Batchelor and plaintiff the opportunity to express their respective positions. Batchelor's call to Damis informed ASP

---

[1] Although Rule 12 provides that ASP's decision is conclusive on the parties, ORS 36.610(3) provides that a party to an arbitration agreement may not waive the requirements of, among other provisions, ORS 36.705. Thus, Rule 12 did not preclude defendant from filing a petition to vacate the award based on evident partiality.

of the objection. Under the rule, Damis's determination that Batchelor should not be disqualified was conclusive, so defendant filing his objection in writing would have served no purpose. Under the circumstances, defendant substantially complied with the rule. Furthermore, there was no other mechanism for objecting other than a petition to vacate the award under ORS 36.705, which defendant timely filed. It follows that, to the extent that the trial court denied defendant's petition based on delay, the court erred.

■    We turn to the trial court's determination that defendant failed to establish evident partiality. Defendant renews the contention that the relationship between Batchelor's law firm and plaintiff's counsel created evident partiality by Batchelor and that, as a result, the court was required by ORS 36.705(1) to vacate the award. ORS 36.705 provides, in part:

"(1)    Upon petition to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:

"(a)    The award was procured by corruption, fraud or other undue means;

"(b)    There was:

"(A)    Evident partiality by an arbitrator appointed as a neutral arbitrator;

"(B)    Corruption by an arbitrator; or

"(C)    Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding[.]"

The term "evident partiality" is not statutorily defined. The parties disagree as to its meaning. According to plaintiff, for the party objecting to the award to establish evident partiality, it must be obvious from the surrounding circumstances that partiality affected the arbitrator's decision. In defendant's view, the term is much more broad and includes not only actual partiality, but the *appearance* of partiality as well.

The meaning of the term "evident partiality" is an issue of statutory construction. To resolve that issue, we begin by looking to the text and context of ORS 36.705. *State*

*v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). The statute is part of a statutory scheme that derived from the Uniform Arbitration Act, which was promulgated by the National Conference of Commissioners on Uniform State Laws (NCCUSL). ORS 36.735 provides that, "[i]n applying and construing ORS 36.600 to 36.740, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." The NCCUSL's commentary to the uniform act helps to explicate the meaning of the statutory terms, so it provides a useful tool for promoting uniformity of the law, and we consider it where appropriate. *See Torres v. Mason*, 315 Or 386, 389, 848 P2d 592 (1993) (relying on commentary to the Uniform Child Custody Jurisdiction Act in construing Oregon's version of the statute).

To determine the meaning of "evident partiality," we begin with the terms themselves. The common meaning of "partiality" is "the inclination to favor one side." *Webster's Third New Int'l Dictionary* 1646 (unabridged ed 2002); *see also id.* (defining "partial" as "inclined to favor one party in a cause or one side of a question more than the other: BIASED, PREDISPOSED" (uppercase in original)). "Inclination," in turn, means "a particular disposition of mind or character : PROPENSITY, BENT" or "a tendency to a particular aspect, state, character, or action." *Id.* at 1143 (uppercase in original); *see also id.* (defining "inclined" as "having inclination, disposition, or tendency").

The common meaning of "evident" is "capable of being perceived esp[ecially] by sight : distinctly visible : being in evidence : DISCERNABLE[;] * * * clear to the understanding : OBVIOUS, MANIFEST, APPARENT." *Id.* at 789 (uppercase in original); *see also id.* (stating that synonyms of "evident" include "APPARENT, PATENT, MANIFEST, PLAIN, CLEAR, DISTINCT, OBVIOUS, [and] PALPABLE" and that, "[s]ince EVIDENT rather naturally suggests *evidence*, it may imply the existence of signs and indications that must lead to an identification or inference" (uppercase in original; emphasis added)).

The common definition of "partiality" forecloses plaintiff's argument that it must be obvious that partiality

affected the arbitrator's decision. To establish evident partiality, the objecting party need only show that the arbitrator was *inclined* to favor one side, not that the arbitrator actually acted upon that inclination, such that the arbitrator's decision was affected to the detriment of the other party. Other provisions in ORS 36.705 confirm that understanding. ORS 36.705(1)(b)(C) provides for mandatory vacatur if there was "[m]isconduct by an arbitrator *prejudicing the rights of a party to the arbitration proceeding*[.]" (Emphasis added.) Similarly, ORS 36.705(1)(c) and (f) provide for mandatory vacatur where other specified circumstances result in substantial prejudice to a party.[2] Those provisions demonstrate that, where the legislature intended to require vacatur only if the rights of a party were prejudiced, it knew how to say so expressly. The absence of a prejudice requirement in ORS 36.705(1)(b)(A) thus indicates that "evident partiality" results in mandatory vacatur regardless of whether it affected the arbitrator's decision.

However, the common meaning of "evident" and the statutory context also foreclose defendant's understanding that "evident partiality" includes the mere appearance of partiality—that is, the appearance of an inclination to favor one side, even if such an inclination does not actually exist. Instead, something that is discernable, obvious, manifest, and palpable must actually exist. "Evident partiality" implies "the existence of signs and indications that must lead to an identification or inference" of partiality.[3]

---

[2] ORS 36.705(1)(c) provides that the court shall vacate the award if the arbitrator refused to postpone the hearing where sufficient cause was shown, refused to consider material evidence, or otherwise conducted the hearing contrary to prescribed procedures "so as to prejudice substantially the rights of a party to the arbitration proceeding."

ORS 36.705(1)(f) requires vacatur if "[t]he arbitration was conducted without proper notice of the initiation of an arbitration as required in ORS 36.635 so as to prejudice substantially the rights of a party to the arbitration proceeding."

[3] We recognize that one of the words used to define "evident" is "apparent," and that one meaning of the latter word is "readily manifest to senses of mind as real or true * * * but possibly distinct from or contrary to reality or truth." *Webster's* at 102; *see also id.* at 103 (synonyms of "apparent" include "SEEMING, OSTENSIBLE, [and] ILLUSORY" (uppercase in original)). However, that is not the sense in which the word is used in the definition of "evident." *See id.* at 789 (explaining that, as a synonym of "evident," "apparent" varies in meaning by "suggest[ing] a longer period of observation or reasoning").

In asserting that evident partiality requires only the appearance of partiality, defendant relies on ORS 36.650(1), which provides that an arbitrator must disclose

"any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding, including:

"(a) A financial or personal interest in the outcome of the arbitration proceeding; and

"(b) An existing or past relationship with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representative, a witness or another arbitrator in the proceeding."

Defendant correctly asserts that an arbitrator must disclose not only facts that actually affect his or her impartiality, but also those that a reasonable person would consider *likely* to affect the arbitrator's impartiality—that is, facts that give rise to the appearance of partiality. Defendant also correctly asserts that ORS 36.650(3) provides that, when an objection based on the existence of such disclosed facts is overruled, the objection may be a ground for vacating the award.[4] Based on those assertions, defendant contends that ORS 36.650 provides "dispositive" context in interpreting ORS 36.705(1)(b).

ORS 36.650 certainly does provide context, but it does not lead to the conclusion that "evident partiality" includes the mere appearance of partiality. Defendant overlooks a significant distinction between ORS 36.650(3) and ORS 36.705(1). ORS 36.650(3) provides that disclosed facts creating the appearance of partiality "may" be a ground to vacate the arbitrator's award, whereas ORS 36.705(1) provides that, if there was evident partiality, the court "shall" vacate the award.[5] If the mere appearance of partiality constituted evident partiality, and thus were sufficient to trigger

---

[4] ORS 36.650(3) provides:

"If an arbitrator discloses a fact required by subsection (1) or (2) of this section to be disclosed and a party timely objects to the appointment or continued service of the arbitrator based upon the fact disclosed, the objection may be a ground under ORS 36.705(1)(b) for vacting an award made by the arbitrator."

[5] The commentary to the Uniform Arbitration Act states that ORS 36.650(3) is intended to give courts "wider latitude in deciding whether to vacate an award" than they have under ORS 36.705(1) and that vacatur is "permissive" under ORS 36.650(3) rather than "mandatory," as under ORS 36.705(1). Unif Arbitration Act (2000) § 12 comment 4, 7 ULA 46 (2009).

mandatory vacatur under ORS 36.705(1)(b), there would never be any occasion for discretionary vacatur under ORS 36.650(3), rendering that provision meaningless surplusage. We presume that the legislature did not intend for any of its enactments to be meaningless. *See* ORS 174.010 (courts shall construe statutes, if possible, to give meaning to all provisions).

■ Even when an arbitrator does not disclose a relationship with a party or a party's counsel, the relationship does not necessarily give rise to evident partiality. ORS 36.650(4) provides that, "[i]f the arbitrator did not disclose a fact as required by subsection (1) or (2) of this section, upon timely objection by a party, the court under ORS 36.705(1)(b) *may* vacate an award." (Emphasis added.) Although the failure to disclose a required fact could give rise to an inference of evident partiality, unless the factfinder actually draws that inference (and thus makes a finding of evident partiality), the failure to disclose gives rise only to discretionary, not mandatory, vacatur.

Even the failure to disclose a "known, direct and material interest in the outcome of the arbitration proceeding or a known, existing and substantial relationship with a party, the party's counsel or representatives, a witness or another arbitrator in the proceeding" gives rise only to a rebuttable presumption that the arbitrator acted with evident partiality. ORS 36.650(5); Unif Arbitration Act (2000) § 12 comment 4, 7 ULA 46 (2009) (when the presumption in ORS 36.650(5) arises, the burden shifts to the party defending the award to rebut the presumption). It does not conclusively establish evident partiality. If such undisclosed facts do not conclusively establish evident partiality, it cannot be that *any* fact that a reasonable person would consider likely to affect impartiality, whether disclosed or not, conclusively establishes evident partiality, as defendant argues.

■ Thus, establishing evident partiality does not require a showing that the arbitrator's decision was actually affected by partiality, as plaintiff argues. Nor is it established by showing only an appearance of partiality, as defendant argues. Instead, it requires that the arbitrator manifested an

actual, discernable inclination to favor one side, whether or not the award was affected by that inclination.

█        Whether an arbitrator manifested an actual, discernable inclination to favor one side is a question of historical fact. The trial court in this case stated, "[O]n the record that's before me, I don't see anything that would lend itself to an objective finding of evident partiality on behalf of Mr. Batchelor." "[U]nless the evidence in a case is such that the trial court as finder of fact could decide a particular factual question in only one way," we are bound by a trial court's factual findings, including a " 'finding' that a party's evidence is not sufficiently persuasive." *State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003). The facts of this case are not such that the trial court was compelled to find evident partiality. Accordingly, we are bound by the court's finding that defendant's evidence was not sufficiently persuasive to establish evident partiality.[6] It follows that the court was not required by ORS 36.705(1) to vacate the arbitration award.

Defendant did not argue to the trial court—or on appeal—that, under ORS 36.650(3), the court had discretion to vacate the award on less than a showing of evident partiality. In all events, defendant waived the right to seek discretionary vacatur. As noted above, ASP's Rule 12 (by which defendant agreed to be bound) provided that ASP's decision as to whether the arbitrator should be disqualified was conclusive on the parties. ORS 36.610(3) provides that a party may not waive the requirements of ORS 36.705 (providing for mandatory vacatur), but it does not preclude waiver of the requirements of ORS 36.650(3). Thus, although the parties could not waive the right to seek mandatory vacatur based on evident partiality, they could—and did—waive the right to seek discretionary vacatur based on the appearance of partiality. Accordingly, we do not consider whether the court

---

[6] We acknowledge that the trial court found that Batchelor had an "actual conflict." However, we understand the court to have meant that he had a conflict of interest in the sense that he had a relationship that he was required to disclose—that is, one that could give rise to the appearance of partiality. As we explained above, such a relationship does not necessarily create evident partiality. Accordingly, the trial court's finding of an actual conflict is not inconsistent with its finding that there was no evident partiality.

abused its discretion under ORS 36.650(3) in denying defendant's petition to vacate the award.

Because the trial court denied defendant's petition to vacate the arbitration award on a proper ground, we affirm the court's judgment.

Affirmed.